UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMY GORDON, *on her own behalf and
on behalf of all similarly situated
individuals*,

      Plaintiff,

v.                               Case No.:  8:16-cv-2561-EAK-AEP

DOUBLE EAGLE OF SARASOTA,
INC., d/b/a TOMMY KNOCKERS,
MARK ROSATO, *individually*, and
CHICK TOTTEN INC., d/b/a TOMMY
KNOCKERS,

      Defendants.
_____

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Amended Motion for Default

Judgment ("**Motion**") (Doc. 36).  No response has been filed by any Defendant, and

the time to do so has expired.  The Court finds that an evidentiary hearing on the

Motion is not required and will render a decision based on the documents submitted.

## I.   Background and Procedural History

      This is a Fair Labor Standards Act ("**FLSA**") case.  On September 2, 2016,

Plaintiff filed her original, three-count civil complaint against Defendants Double

Eagle of Sarasota, Inc. ("**DES**") and Mark Rosato.  (Doc. 1).  Through her complaint,

Plaintiff alleged that DES and Rosato engaged in unlawful pay practices.  Id. at ¶¶1–

43.  Specifically, Plaintiff's complaint asserted claims for unpaid minimum wages

pursuant to the FLSA, 29 U.S.C. § 216(b), (Counts I and III) and tip credit violations pursuant to Article X, Section 24, of the Florida Constitution (Count II). Id. at ¶¶44–70.  Plaintiff sued DES and Rosato on behalf of herself and all other similarly situated individuals. Id. at ¶5.  Plaintiff sought unpaid minimum wages, liquidated damages, and reasonable attorneys' fees and costs. Id.

DES and Rosato filed their answer on November 1, 2016. (Doc. 2).  DES and Rosato were represented by attorney Harry W. Haskins.  Shortly after appearing on their behalf, however, attorney Haskins moved to withdraw from representation of DES and Rosato on January 10, 2017. (Doc. 10).  United States Magistrate Judge Anthony E. Porcelli granted the motion on January 17, 2017. (Doc. 13).  Pursuant to Rule 2.03(e)[1] of the Rules of the District Court of the United States for the Middle District of Florida ("**Local Rules**"), Judge Porcelli ordered DES to retain new counsel within thirty days. (Doc. 13 at ¶3).  Judge Porcelli advised DES that if it failed to retain new counsel as ordered, a recommendation that a default be entered against DES would issue. Id.  Because Rosato is an individual, he had the option of either retaining new counsel or representing himself *pro se.*

Notwithstanding Judge Porcelli's clear instructions, DES failed to retain new counsel, and the undersigned accordingly ordered DES to show cause why default

---

[1]   Local Rule 2.03(e) states, "A corporation may appear and be heard only through counsel admitted to practice in the Court pursuant to Rule 2.01 or 2.02." L.R. M.D. Fla. 2.03(e).

should not be entered against it.  (Doc. 14).  DES failed to respond to the Court's show cause order, and the Clerk entered default against DES on March 14, 2018. (Doc. 15).

Plaintiff subsequently filed her operative, amended complaint on November 13, 2018.  (Doc. 21).  Plaintiff's amended complaint adds Chick Totten, Inc. ("**CTI**"), a successor entity to DES, as a Defendant.  Id. at ¶7.  Plaintiff's allegations remain otherwise unchanged.  Compare (Doc. 1) with (Doc. 21).  The Clerk issued civil summonses as to Rosato and CTI, respectively, on November 15, 2017.  (Docs. 22, 23).  Plaintiff served Rosato and CTI with a copy of the summons and the amended complaint on December 6, 2017,[2] (Docs. 24, 25), making their deadline to file a responsive pleading December 27, 2017, see Fed. R. Civ. P. 12(a)(1)(A)(i). Rosato and CTI failed to respond by the deadline, however, and Plaintiff moved for entry of default against both Defendants on January 8, 2018.  (Doc. 26).  The Clerk entered default against Rosato and CTI the same day.  (Docs. 27, 28).

Plaintiff filed her original motion for default judgment on February 14, 2018. (Doc. 30).  However, Plaintiff's motion requested default judgment be entered in her favor against only Rosato and TCI; the motion made no mention of DES.  Id. Additionally, Plaintiff's motion sought relief not only on her own behalf but also on

---

[2] Because DES was in default when the amended complaint was filed, Plaintiff was not required to serve the amended complaint upon it, since the amended complaint does not assert new claims against DES.  See Fed. R. Civ. P 5(a)(2).

behalf of a purported class of similarly situated individuals.  Id. at 1.  However, Plaintiff had not previously moved to certify the purported class pursuant to Federal Rule of Civil Procedure 23 and Local Rule 4.04.  The Court accordingly denied Plaintiff's motion without prejudice and ordered Plaintiff file an amended motion as to all three named Defendants.  (Doc. 31).  The Court further ordered Plaintiff to address in any amended motion whether her collective action allegations should be dismissed, and the amended motion be resolved only as to Plaintiff's individual claims against Defendants.  Id.

Plaintiff filed the instant Motion on July 13, 2018.  (Doc. 36).  Through the Motion, Plaintiff seeks the entry of a final default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure against all three Defendants on her FLSA and Article X, Section 24, claims (Counts I and II) in the amount of $11,959.20, which sum represents amounts for unpaid minimum wages, unpaid overtime wages, and liquidated damages.  Id.  In a footnote, Plaintiff explains that, although she "originally filed this action as a collective action," she "only seeks default judgment on her own behalf."  Id. at 1, n.1.  Thus, it appears that Plaintiff has abandoned her collective action claim (Count III).  No Defendant filed a response to the Motion within the time prescribed by Local Rule 3.01(b) or has otherwise moved to set aside the Clerk's defaults.  See L.R. M.D. Fla. 3.01(b) (requiring any party opposing a

motion to file a response within fourteen days of service of the motion).  The Motion is thus ripe for decision.

## II.   Jurisdiction

The Court has jurisdiction over the subject matter herein and the parties hereto pursuant to the FLSA, 29 U.S.C. § 201, et seq.  The Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.  No party has contested the Court's jurisdiction in this case, and the Court sees no basis to decline jurisdiction.

## III.   Legal Standard

A district court may enter judgment by default when a defendant has failed to plead or otherwise defend an action.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)).  The defaulting defendant is deemed to have admitted the plaintiff's well-pleaded facts, but not legal conclusions.  Id. at 1245.  Default judgement is only justified when "a sufficient basis in the pleadings [exists] for the judgement entered."  Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).[3]  If liability is well-pled, it is established by virtue of a default judgment.  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

---

[3]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

A default judgment cannot stand on a complaint that fails to state a claim. Chudasama v. Mazda Motor Corporation, 123 F.3d 1353, 1370, n. 41 (11th Cir. 1997) (citation omitted).  In that respect, "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245 (citation omitted).  "When evaluating a motion to dismiss, a court looks to see whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (citing Ashcroft, 556 U.S. at 678).

Once liability is established, district courts then address the terms of the judgment.  Cohan v. Sparkle Two, LLC, 309 F.R.D. 665, 667 (M.D. Fla. 2015). Well-pled allegations as to damages are admitted by a default.  Giovanno v. Fabec, 804 F.3d 1361, 1366 (11th Cir. 2015) (citing SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).  "A default judgment must not differ in kind from or exceed in amount what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  "The Court *may* conduct hearings on the amount of damages." Gibson v. Kirkwood Bar & Grill, LLC, No. 1:13-cv-308-JEC, 2014 WL 632357, at *1 (N.D. Ga. Feb. 18, 2014) (citing Fed. R. Civ. P. 55(b)(2)(B)) (emphasis in original).  "However, an evidentiary

Case No.:  8:16-cv-2561-EAK-AEP

hearing for a determination of damages is not *always* required; rather, it is a decision

that is left to the discretion of the [district court]."  Id.  (citing Tara Prods., Inc. v.

Hollywood Gadgets, Inc., 449 Fed. App'x 908, 911–12 (11th Cir. 2011)

(unpublished) (emphasis in original).  If "all essential evidence [is] already of

record," a "district court [can] properly exercise its discretion not to hold a hearing"

on the amount of damages.  Smyth, 420 F.3d at 1233.

## IV.   **Discussion**

In Counts I and II of her amended complaint, Plaintiff asserts minimum wage

and tip credit violations pursuant to the FLSA, 29 U.S.C. § 206 ("**Section 206**"), and

Article X, Section 24, of the Florida Constitution.  (Doc. 22 at ¶52–71).  A plaintiff

establishes a *prima facie* case of a FLSA minimum wage violation where she shows

that "as a matter of just and reasonable inference" the wages she was paid did not

satisfy the requirements of the FLSA.  Rance v. Rocksolid Granit USA, Inc., 292 F.

App'x 1, 2 (11th Cir. 2008) (unpublished) (citing Caro-Galvan v. Curtis Richardson,

993 F.2d 1500, 1513 (11th Cir. 1993)); see also Anderson v. Mt. Clemens Pottery

Co., 328 U.S. 680, 686–87 (1946); Donovan v. New Floridian Hotel, Inc., 676 F.2d

468, 475 n.12 (11th Cir. 1982).  Section 206 requires that

> "[e]very employer shall pay to each of his employees who in any
> workweek is engaged in commerce or in the production of goods for
> commerce, or is employed in an enterprise engaged in commerce or in
> the production of goods for commerce, wages . . . not less than (A)
> $5.85 an hour, beginning on the 60th day after May 25, 2007; (B) $6.55

an hour, beginning 12 months after that 60th day; and (C) $7.25 an hour, beginning 24 months after that 60th day."

29 U.S.C. § 206(a)(1)(A)–(C).  Therefore, to succeed on her Motion, Plaintiff must show that:   (1) she was an employee of Defendants;  (2) Defendants were an enterprise engaged in commerce or in the production of goods for commerce; and (3) Defendants failed to pay her the statutorily mandated minimum wage.[4]  Id.; see also Pattern Civ. Jury Instr. 11th Cir. 4.14 (2018).  The Court will address each of those elements, in turn, below as to Plaintiff's claim for unpaid minimum wages and tip credit violations.  The Court will then address the issue of damages, including Plaintiff's request (in her Motion) for damages related to unpaid overtime wages.

**A. Whether Plaintiff Was an Employee of Defendants**

An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "[A] covered employee may file suit directly against an employer that fails to pay [her] the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292,

---

[4]  As detailed further, infra, Article X, Section 24, of the Florida Constitution requires employers to pay "tipped employees" a minimum cash wage above the minimum cash wage required under the FLSA.

Case No.: 8:16-cv-2561-EAK-AEP

1298 (11th Cir. 2011) (citing <u>Patel v. Wargo</u>, 803 F.2d 632, 637–38 (11th Cir. 1986)).

Here, Plaintiff alleges that she worked as a server and bartender at Tommy Knockers, a restaurant and sports bar in Bradenton, Florida, from September 1, 2015 through May 30, 2016. (Doc. 21 at ¶5); (Doc. 36 at "EXHIBIT A").[5]  Plaintiff further alleges that Tommy Knockers was originally owned and operated by Defendant DES until DES was dissolved on August 26, 2018. (Doc. 21 at ¶6). Based on these allegations, the Court finds that Plaintiff has pled sufficient facts demonstrating that she was an employee of DES, doing business as Tommy Knockers, and that DES was Plaintiff's employer.

Plaintiff also alleges that, prior to its dissolution, Rosato was the President of DES. <u>Id.</u> at ¶8. Plaintiff further alleges that Rosato controlled and was responsible for Plaintiff's work at Tommy Knockers, regularly supervised Plaintiff's daily activities, and created and implemented Tommy Knockers' policies and practices. <u>Id.</u> at ¶¶24–26. The Court finds that these allegations are sufficient to establish that

---

[5] Plaintiff's amended complaint alleges that she worked at Tommy Knockers from "February 2012 through May 2016." (Doc. 21 at ¶5). However, in the affidavit attached to her Motion, Plaintiff affirms that she worked at Tommy Knockers from September 1, 2015 through May 30, 2016. (Doc. 36 at "EXHIBIT A"). Plaintiff bases her damages calculations on the September 1, 2015 through May 30, 2016 time period. <u>Id.</u> For purposes of deciding the Motion, the Court will rely on the dates of employment provided by Plaintiff in her sworn affidavit.

Rosato (1) acted on behalf of DES and (2) asserted control over the conditions of Plaintiff's employment such that he is also considered Plaintiff's employer.

Because the Court has found that DES and Rosato were Plaintiff's employers, they are jointly and severally liable for Plaintiff's damages. Patel, 803 F.2d at 637–38 ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Plaintiff further alleges that, subsequent to DES's dissolution on August 26, 2018, CTI assumed ownership and undertook the day-to-day operations of Tommy Knockers. Id. at ¶¶47–48.  Although Plaintiff was not employed with Tommy Knockers while it was under the ownership and control of CTI, Plaintiff alleges that "[a]s the successor enterprise . . . to [DES], [CTI] is liable for [DES's] violations of [the FLSA]." Id. at ¶51.

The common law theory of successor liability applies in FLSA cases. See Hatfield v. A+ Nursetemps, Inc., 651 F. App'x 901, 905–07 (11th Cir. 2016) (unpublished).  Hatfield's successor liability standard considers whether: "(1) the successor had notice of the pending action; (2) the predecessor would have been able to provide the relief sought in the [action] before the sale; (3) the predecessor could have provided the relief after the sale (its inability to provide relief favors successor

liability); (4) the successor can provide the relief sought in the [action]; and (5) there is continuity between the operations and work force of the predecessor and the successor". Id. at 907 (internal quotations and citations omitted).

Here, in attempting to establish CTI's successor liability, Plaintiff alleges the following:  on June 24, 2016, counsel for Plaintiff sent DES a letter requesting Plaintiff's payroll records and notifying DES that he was investigating potential FLSA violations.   (Doc. 21 at ¶44).   DES and Rosato failed to respond that correspondence. Id. at ¶45. On August 19, 2016 Rosato created CTS and, shortly thereafter, applied for the fictitious name "Tommy Knockers." Id. at ¶46. Rosato is listed as the current President of CTI. Id. at ¶8.  On August 26, 2016, Rosato voluntarily dissolved DES and transferred the assets of DES to CTI, and CTI subsequently assumed ownership and undertook the operations of Tommy Knockers. Id. at 47–49. Tommy Knockers remained at the same physical location, and the management, control, and day-to-day activities of Tommy Knockers have remained the same. Id. at ¶50. Furthermore, as reflected by the Court's docket, after Plaintiff filed her lawsuit on September 2, 2016, Rosato and DES participated in the litigation and otherwise defended the action through (at least) January 10, 2017, when their counsel moved to withdraw. (Doc. 10).  The Court finds that these allegations are sufficient to establish successor liability on the part of CTI under the

Hatfield factors.  Therefore, CTI is liable for DES's FLSA violations and Plaintiff's resulting damages.

### B. Whether Defendants Were an Enterprise Engaged in Commerce or in the Production of Goods for Commerce

The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

Here, Plaintiff alleges that "[a]t all material times during the last three years, Defendants were an enterprise engaged in commerce or in the production of goods for commerce, in that [Defendants have] had at least two employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." (Doc. 21 at ¶16).  Plaintiff further alleges that:  Defendants' employees ran credit card transactions, which transacted business in interstate commerce on a daily basis, id. at ¶17; Defendants' employees handled goods such as napkins, silverware, appliances, food items, and restaurant equipment which had traveled in interstate commerce on a daily basis, id. at ¶18; and Defendants had an annual gross volume of sales made or business done of not less

than $500,000, id. at ¶19.  The Court finds that these allegations are sufficient to establish that Defendants were an enterprise engaged in commerce or in the production of goods for commerce.

### C. Whether Defendants Failed to Pay Plaintiff the Statutorily Mandated Minimum Wage

The FLSA requires employers to pay their employees at least the federal or state minimum wage, whichever is greater, for every hour worked.  See 29 U.S.C. §§ 206, 218(a).  However, "the FLSA contains an exception that permits employers to pay less than the general minimum wage—$2.13 per hour—to a 'tipped employee' as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage."  Montano v. Montrose Rest. Assocs., Inc., 800 F.3d 186, 188 (5th Cir. 2015) (citing 29 U.S.C. § 203(m); Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 874 (8th Cir. 2011)).  "This employer discount is commonly referred to as a 'tip credit.'"  Id. (citing Fast, 638 F.3d at 874). Employers must provide oral or written notice to tipped employees of the use of the tip credit in advance.  29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).  An employer seeking to claim the tip credit must permit the employee to retain all of her tips. However, the FLSA permits the pooling of tips among employees who customarily and regularly receive tips.  29 U.S.C. § 203(m).  But "if an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit."  Montano, 800 F.3d at 188.

Case No.:  8:16-cv-2561-EAK-AEP

Similarly to the FLSA, Article X, Section 24, of the Florida Constitution

provides for a tip credit, by which employers may take a credit toward the minimum

wage owed to tipped employees.  Fla. Const. art. X, § 24.  However, Article X,

Section 24, permits employers to credit towards satisfaction of the minimum wage

tips up to the amount of the allowable FLSA tip credit in 2003 for eligible

employees.  Id.  The 2003 FLSA tip credit is $3.02 per hour.  See U.S. Dep't. of

Labor, Wage and Hour Div., *Minimum Wages for Tipped Employees*, (Jan. 1, 2017),

https://www.dol.gov/whd/state/tipped.htm#Florida (last visited October 31, 2018).

During the time Plaintiff was employed by Defendants, the Florida minimum wage

was $8.05 per hour.  See Fla. Dep't. of Economic Opportunity, *Florida Minimum*

*Wage  History  2000  to  2016*,  http://sitefinity.floridajobs.org/docs/default-

source/2016-minimum-wage-increases/florida-minimum-wage-history-2000-2016

.pdf?status=Temp&sfvrsn=0.5425500785086295 (last visited October 31, 2018).

Thus, the difference between the Florida minimum wage and the applicable tip credit

during the time Plaintiff was employed by Defendants equaled $5.03 per hour ($8.05

less $3.02 equals $5.03).

Here, Plaintiff alleges that she was a tipped employee.  (Doc. 21 at ¶13).

Therefore, during the time Plaintiff was employed by Defendants, she should have

been paid at least $5.03 per hour in direct wages.  Through her affidavit, Plaintiff

affirms that she was, in fact, paid $5.03 per hour.  (Doc. 36 at "EXHIBIT A").

14

Plaintiff alleges, however, that "Defendants failed to inform [her] of the tip credit provisions of the FLSA."   Additionally, Plaintiff alleges that she was not given adequate notice of the of Defendants' use of the tip credit in advance.  Id. at ¶75. Plaintiff further alleges that Defendants required her "to participate in a tip pool arrangement that include[d] traditionally non-tipped employees."  Id. at ¶56.  The Court finds that these allegations are sufficient to establish that Defendants failed to provide notice pursuant to 29 U.S.C. § 203(m), and that Plaintiff was required to share her tips with individuals who did not customarily and regularly receive tips. Therefore, Defendants were not permitted to take advantage of the FLSA's tip-credit provisions and, consequently, must have paid Plaintiff at least the minimum wage, while also allowing Plaintiff to keep all tips she received.  Bennett v. JDC Ventures, LLC, No. 2:16-cv-649-JES-CM, 2017 WL 894624, at *2 (M.D. Fla. Mar. 7, 2017).

**D. Damages**

As detailed by the Court, supra, Defendants were required to have paid Plaintiff at least the Florida minimum wage, or $8.05 per hour.  However, Plaintiff was paid only $5.03 per hour.  (Doc. 36 at "EXHIBIT A").  The difference between what Plaintiff was paid and the Florida minimum wage is $3.02 per hour.  Thus, Plaintiff is due $3.02 per hour for all hours worked at the reduced wage.  Through the sworn affidavit submitted with her Motion, Plaintiff affirms that from September 1, 2015 through May 30, 2016, she worked 1,440 hours.  Id.  Therefore, the Court

finds that Plaintiff is entitled to $4,348.80 in unpaid minimum wages ($3.02/hour

multiplied by 1,440 hours equals $4,348.80) as damages for Defendants violations

of the FLSA and Article X, Section 24, of the Florida Constitution. Id.

The Court next turns to Plaintiff's demand for liquidated damages. (Doc. 21

at ¶64, "WHREFORE" clause).   Under the FLSA, any employer found to have

violated the minimum wage provisions of the FLSA is liable for an additional equal

amount as liquidated damages.   29 U.S.C. § 216(b). Liquidated damages are

mandatory unless the employer can show that it acted in good faith and had

reasonable grounds to believe that its actions did not violate the FLSA minimum

wage requirement. Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir. 1987)).

Here, due to their default, Defendants have not shown that they acted in good faith.

Therefore, the Court finds that Plaintiff is entitled to an additional equal amount in

liquidated damages as to Counts I and II, for a total of $8,697.60.

### E. Unpaid Overtime Wages

In addition to unpaid minimum wages, Plaintiff, seeks damages for amounts

attributable to unpaid overtime wages pursuant to the FLSA.   See (Doc. 36 at

"EXHIBIT A") ("I was not paid for approximately 15 hours of overtime each month

I was employed.").   However, Plaintiff's amended complaint does include a separate

claim for unpaid overtime wages, or any allegations that she worked in excess of

forty hours per week during any given work week for which she was not paid the

Case No.:  8:16-cv-2561-EAK-AEP

statutory rate.  As a result, Plaintiff has failed to sate a plausible claim for relief for unpaid overtimes wages under the FLSA.  Plaintiff's Motion is accordingly due to be denied in that respect.

## V.   Conclusion

Accordingly, it is

**ORDERED** that Plaintiff's Amended Motion for Default Judgment (Doc. 36) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's Motion is **GRANTED** as to Counts I and II of Plaintiff's amended complaint.

2. The Clerk shall enter default judgment in favor of Plaintiff and against Defendants Double Eagle of Sarasota, Inc., Chick Totten, Inc., and Mark Rosato as to Counts I and II of Plaintiff's amended complaint for unpaid minimum wage compensation and tip credit violations in the amount of $4,348.80, and an equal amount of liquidated damages in the amount of $4,348.80, for a total of $8,697.60.

3. Plaintiff's collective action claim in Count III of her amended complaint is **DISMISSED** without prejudice.

4. Plaintiff's request for damages for amounts of unpaid overtime wages is **DENIED**.

Case No.:  8:16-cv-2561-EAK-AEP

5.  Any motion for attorney's fees and/or costs shall be filed within **FOURTEEN (14) DAYS** of the entry of judgment.

6.  The Clerk is shall to send a copy of this Order, addressed to all Defendants, to 5627 14th Street West, Suite F,G,H, Bradenton, Florida 34207.

7.  The Clerk is shall terminate any pending motions and administratively close the file.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 2nd day of November, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties[6]

---

[6]  Should any unrepresented party have questions or concerns regarding the Court's instructions, he or she is encouraged to make use of the resources available to *pro se* litigants in this District. The Tampa Bay Chapter of the Federal Bar Association operates a Legal Information Program on Tuesdays from 1:00 p.m. to 2:30 p.m. at the Sam M. Gibbons United States Courthouse, 801 North Florida Ave, Tampa, FL 33602.  Through that program, *pro se* litigants may consult with a lawyer on a limited basis, free of charge.  More information about the program is available on the Court's website at http://www.flmd.uscourts.gov/legal-information-program.  Additionally, librarians, lawyers, and judges from around the Middle District created a helpful guide to assist *pro se* litigants proceeding in federal court.  That guide can be found by following this link: http://www.flmd.uscourts.gov/sites/flmd/files/documents/mdfl-guide-for-proceeding-without-a-lawyer.pdf.